# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARMEN ROSA GOMEZ, Individually, and as Administrator Ad Prosequen-dum of the Estate of Jorge L. Gomez, Deceased, | ECF CASE |
| | CIVIL CASE NO. _____ |
| Plaintiff, | (___)(___) |
| vs. | |
| | **SUMMONS** |
| H&M INTERNATIONAL TRANSPORTATION, INC.; NORFOLK SOUTHERN CORPORATION; CONSOLIDATED RAIL CORPORATION; TECHNICAL SERVICES INTERNATIONAL; MI-JACK PRODUCTS, INC.; HOIST LIFTRUCK MANUFACTURING, LLC.; FEDEX FREIGHT, INC., GENERAL CABLE INDUSTRIES, INC., and PMX INDUSTRIES, INC., | |
| Defendants. | |

**To the Defendants named above:**
H&M INTERNATIONAL TRANSPORTATION, INC.;
NORFOLK SOUTHERN CORPORATION;
CONSOLIDATED RAIL CORPORATION;
TECHNICAL SERVICES INTERNATIONAL;
MI-JACK PRODUCTS, INC.;
HOIST LIFTRUCK MANUFACTURING, LLC.;
FEDEX FREIGHT, INC.;
GENERAL CABLE INDUSTRIES, INC.; and
PMX INDUSTRIES, INC.

A lawsuit has been filed against you.

Within 20 days after service of this Summons on you (not counting the day you received it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) – you must serve on the Plaintiff(s) an Answer to the attached Complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The Answer or motion must be served on the Plaintiff(s) or Plaintiff(s) attorney, whose name and address is:

**LIAKAS LAW, P.C.**
**65 BROADWAY, SUITE 1101**
**NEW YORK, NEW YORK 10006**

If you fail to respond, judgement by default will be entered against you for the relief demanded in the Complaint.  You must also file your Answer or motion with the Court.

Dated: January 10, 2017

CLERK OF THE COURT

_____
Signature of the Clerk or Deputy Clerk

**RIDER:**

| | |
|---|---|
| Name and Address of Defendant to be served: | H&M INTERNATIONAL TRANSPORTATION, INC. <br> 485B Route 1 South <br> Iselin, New Jersey 08830 |
| Name and Address of Defendant to be served: | NORFOLK SOUTHERN CORPORATION <br> 1000 Howard Boulevard, Suite 102 <br> Mount Laurel, New Jersey 08054 |
| Name and Address of Defendant to be served: | CONSOLIDATED RAIL CORPORATION <br> 1717 Arch Street <br> Philadelphia, Pennsylvania 19103 |
| Name and Address of Defendant to be served: | TECHNICAL SERVICES INTERNATIONAL <br> 600 Hartle Street <br> Sayreville, New Jersey 08827 |
| Name and Address of Defendant to be served: | MI-JACK PRODUCTS, INC. <br> 3111 West 167th Street <br> Hazel Crest, Illinois 60429 |
| Name and Address of Defendant to be served: | HOIST LIFTRUCK MANUFACTURING, LLC <br> 6499 West 65th Street <br> Chicago, Illinois 60638 |
| Name and Address of Defendant to be served: | FEDEX FREIGHT, INC. <br> 2200 Forward Drive <br> Harrison, Arkansas 72601 |
| Name and Address of Defendant to be served: | GENERAL CABLE INDUSTRIES, INC. <br> 4 Tesseneer Drive <br> Highland Heights, KY 41076 |
| Name and Address of Defendant to be served: | PMX INDUSTRIES, INC. <br> 5300 Willow Creek Drive SW <br> Cedar Rapids, IA 52404 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CARMEN ROSA GOMEZ, Individually, and as Administrator Ad Prosequen-dum of the Estate of Jorge L. Gomez, Deceased, | ECF CASE |
| Plaintiff, | CIVIL CASE NO. _____ (___)(___) |
| vs. | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| H&M INTERNATIONAL TRANSPORTATION, INC.; NORFOLK SOUTHERN CORPORATION; CONSOLIDATED RAIL CORPORATION; TECHNICAL SERVICES INTERNATIONAL; MI-JACK PRODUCTS, INC.; HOIST LIFTRUCK MANUFACTURING, LLC.; FEDEX FREIGHT, INC., GENERAL CABLE INDUSTRIES, INC. and PMX INDUSTRIES, INC., | |
| Defendants. | |

## INTRODUCTION

Plaintiff, Carmen Rosa Gomez, individually and as representative of the Estate of Jorge L. Gomez, deceased, by counsel, brings this Complaint to the best of her knowledge, information and belief formed after an investigation reasonable under the circumstances, including a review of Defendants' public documents, applicable statutes, rules and regulations, communications by Defendants, and news articles and information readily obtainable on the Internet, which facts are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, except for information identified herein based on personal knowledge, hereby brings an action for wrongful death, including but not limited to, great bodily injury; death; loss of wages and earning capacity; loss of economic benefit and enrichment; fear of impending death, conscious pain and suffering, severe mental anguish, emotional pain and suffering, loss of consortium, loss

of society, loss of companionship, loss of comfort, loss of protection, loss of marital care, loss of parental care, loss of filial care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance and loss of education, against Defendants under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* (hereinafter "FELA"), New Jersey's Product Liability Act, N.J.S.A 2A:58C *et seq.*, New Jersey's Wrongful Death Act, N.J.S.A.; 2A:15-3 *et seq.*, New Jersey's Survival Act, N.J.S.A.; 2A:14-5 and 2A:15-3 *et seq.*, and common law negligence. Plaintiff also asserts claims for punitive damages.

## THE PARTIES

1.     At all times herein mentioned, Plaintiff, Carmen Rosa Gomez (hereinafter "Plaintiff") is the surviving wife of decedent, Jorge L. Gomez (hereinafter "Decedent") and is the representative as Administrator Ad Prosequen-dum of the Estate of Jorge L. Gomez. Plaintiff resides in the City of Bayonne, State of New Jersey.

2.     At all times herein mentioned, the Decedent, Jorge L. Gomez, resided in the City of Bayonne, State of New Jersey at the time of his death. At the time of the hereinafter mentioned incident, Decedent, Jorge L. Gomez and Plaintiff, Carmen Rosa Gomez were married.

3.     That on September 7, 2016, Plaintiff, Carmen Rosa Gomez was granted letters of Administration Ad Prosequen-dum to the Estate of Jorge L. Gomez, and as such, is the sole individual duly authorized to bring an action, institute a proceeding or make a claim on behalf of the Estate of Jorge L. Gomez, pursuant to N.J.S.A. 3B:10-11.

4.     At all times herein mentioned, Defendant, H&M International Transportation, Inc. (hereinafter "H&M International") is a business, partnership and/or corporation authorized to and doing business in the State of New Jersey with a commercial address of 485B Route 1 South, Iselin, New Jersey 08830.

5.      At all times herein mentioned, Defendant, Norfolk Southern Corporation (hereinafter "Norfolk Southern") is a business, partnership and/or corporation authorized to and doing business in the State of New Jersey with a commercial address of 1000 Howard Boulevard, Suite 102, Mount Laurel, New Jersey 08054.

6.      At all times herein mentioned, Defendant, Consolidated Rail Corporation (hereinafter "Consolidated Rail") is a business, partnership and/or corporation authorized to and doing business in the State of New Jersey with a commercial address of 1717 Arch Street, Philadelphia, Pennsylvania 19103.

7.      At all times herein mentioned, Defendant, Technical Services International (hereinafter "TSI") is a business, partnership and/or corporation authorized to and doing business in the State of New Jersey with a commercial address of 600 Hartle Street, Sayreville, New Jersey 08827.

8.      At all times herein mentioned, Defendant, Mi-Jack Products, Inc. (hereinafter "Mi-Jack") is a business, partnership and/or corporation authorized to and doing business in the State of New Jersey with a commercial address of 3111 West 167th Street, Hazel Crest, Illinois 60429.

9.      At all times herein mentioned, Defendant, Hoist Liftruck Manufacturing, LLC (hereinafter "Hoist") is a business, partnership and/or corporation authorized to and doing business in the State of New Jersey with a commercial address of 6499 West 65th Street, Chicago, Illinois 60638.

10.     At all times herein mentioned, Defendant, FedEx Freight, Inc. (hereinafter "FedEx") is a business, partnership and/or corporation authorized to and doing business in the State of New Jersey with a commercial address of 3610 Hacks Cross Road, Memphis, Tennessee 38125.

11.     At all times herein mentioned, Defendant, General Cable Industries, Inc. (hereinafter "General Cable") is a business, partnership and/or corporation authorized to and doing business in

the State of New Jersey with a commercial address of 4 Tesseneer Drive, Highland Heights, Kentucky 41076.

12.     At all times herein mentioned, Defendant, PMX Industries, Inc. (hereinafter "PMX") is a business, partnership and/or corporation authorized to and doing business in the State of New Jersey with a commercial address of 5300 Willow Creek Drive SW, Cedar Rapids, Iowa 52404.

## JURISDICTION AND VENUE

13.     The Court has jurisdiction over this matter and the Defendants pursuant to 45 U.S.C. § 51 *et seq.*, commonly referred to as the Federal Employers' Liability Act, and 28 U.S.C. § 1331.

14.     This Court can also exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because they are derived from the same nucleus of operative facts as the federal law claim such that Plaintiff would ordinarily expect to try them in one proceeding.

15.     Venue is proper in this judicial district under 45 U.S.C. § 56 and 28 U.S.C. § 1391 because Defendants transact business, committed an illegal and/or tortious act, has an agent, and/or is found in this district, and because a substantial part of the events described herein occurred in this district.

16.     Venue is proper in this judicial district under 45 U.S.C. § 56 and 28 U.S.C. § 1391 because the accident occurred at Croxton Intermodal Terminal, located at 125 County Road, Jersey City, New Jersey 07097.

*(remainder of this page intentionally left blank)*

## BACKGROUND

17.     On August 15, 2016, during the course of his employment, Jorge L. Gomez, was provided with a Hoist Lift Truck – Loaded Container Handler #28-9347.  Jorge L. Gomez was in the process of off-loading an intermodal container bearing serial number FDXU 532907 when both the boom of the Hoist Lift Truck – Loaded Container Handler #28-9347 and the attached intermodal container FDXU 532907 struck Jorge L. Gomez (hereinafter the "incident").  Mr. Gomez died in this incident.

## COUNT ONE

## AGAINST DEFENDANTS H&M INTERNATIONAL TRANSPORTATION, INC., NORFOLK SOUTHERN CORPORATION and CONSOLIDATED RAIL CORPORATION

## FEDERAL EMPLOYERS' LIABILITY ACT, 45 U.S.C. 45 U.S.C. § 51 *et seq.*

18.     Plaintiff brings this action under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq*.  This action is timely commenced within the meaning of 45 U.S.C. § 56.

19.     At all times herein mentioned, the answering Defendant was a rail carrier.

20.     At all times herein mentioned, the answering Defendant engaged in interstate commerce and was operating an interstate system of railroads and rail terminals in and through several states, including the State of New Jersey.

21.     At all times herein mentioned, the answering Defendant shipped goods using connections with rail and trucking partners.

22.     At all times herein mentioned, the answering Defendant supported international trade by serving, among others, every major East Coast ocean port as well as Gulf and Great Lakes ports.

23.     At all times herein mentioned, the answering Defendant performed a full menu rail operations and those operations ancillary to rail transportation.

24.     At all times herein mentioned, the answering Defendant provided intermodal operations, such as rail terminal operations, intermodal trucking, warehousing and distribution, container freight stations, and Customs exam sites.

25.     At all times herein mentioned, the answering Defendant insured that all inbound traffic is grounded in a timely manner after placement, and that outbound traffic is loaded in accordance with cutoffs, pull times and other service standards at Croxton Intermodal Terminal.

26.     At all times herein mentioned, the answering Defendant was responsible for receiving incoming trains, moving and preparing the railroad trailers on and off these trains to a storage area, and moving and preparing the railroad trailers from a storage area to the outbound trains heading to off-site destinations.

27.     At all times herein mentioned, the answering Defendant was responsible for insuring timely movement and preparation of all inbound and outbound trains through Croxton Intermodal Terminal.

28.     At all times herein mentioned, the answering Defendant actively managed and united the railroad and its contractors into an organized system.

29.     At all times herein mentioned, the answering Defendant was a common carrier.

30.     At all times herein mentioned, the answering Defendant had "contract carrier" and/or "common carrier" authority.

31.     At all times herein mentioned, the answering Defendant was performing as part of a system of interstate rail transportation by virtue of common ownership between itself and a railroad or by a contractual relationship with a railroad.

32.     At all times herein mentioned, the answering Defendant was and still is holding itself out to the public for hire.

33.    At all times herein mentioned, the answering Defendant was and still is willing to furnish a broad range of rail operations including, but not limited to, lift on/lift off services to persons, corporations, and/or entities who request it.

34.    At all times herein mentioned, the answering Defendant performed services as part of the total rail service contracted for by a member of the public.

35.    At all times herein mentioned, the answering Defendant received remuneration for the services performed as a fixed charge from a railroad or by a percent of the profits earned from a railroad.

36.    That at all times herein mentioned, Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey was a rail terminal operating as part of an interstate railroad.

37.    That at all times herein mentioned, Croxton Intermodal Terminal operated bearing Standard Point Location Code # 191560.

38.    That on August 15, 2016, the answering Defendant owned Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

39.    That on August 15, 2016, the answering Defendant operated Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

40.    That on August 15, 2016, the answering Defendant conducted business operations at Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

41.    At all times herein mentioned, the answering Defendant exercised special use of the railroad within Croxton Intermodal Terminal.

42.    At all times herein mentioned, the answering Defendant exercised special use of "Track E" within Croxton Intermodal Terminal.

43.    That on August 15, 2016, the answering Defendant maintained Croxton Intermodal

Terminal located at 125 County Road, Jersey City, New Jersey.

44.    That on August 15, 2016, the answering Defendant controlled Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

45.    That on August 15, 2016, the answering Defendant managed Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

46.    That on August 15, 2016, the answering Defendant supervised Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

47.    That on August 15, 2016, the answering Defendant owned cranes, hoist equipment, loaded container handlers and/or machinery at Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

48.    That on August 15, 2016, the answering Defendant owned the Hoist Lift Truck – Loaded Container Handler #28-9347.

49.    That on August 15, 2016, the answering Defendant operated cranes, hoist equipment, loaded container handlers and/or machinery at Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

50.    That on August 15, 2016, the answering Defendant, by its agents, servants and/or employees, operated the Hoist Lift Truck – Loaded Container Handler #28-9347.

51.    That on August 15, 2016, the answering Defendant maintained cranes, hoist equipment, loaded container handlers and/or machinery at Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

52.    That prior to and/or on August 15, 2016, the answering Defendant, by its agents, servants and/or employees, maintained the Hoist Lift Truck – Loaded Container Handler #28-9347.

53.    That on August 15, 2016, the answering Defendant controlled cranes, hoist equipment,

loaded container handlers and/or machinery at Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

54.     That on August 15, 2016, the answering Defendant, by its agents, servants and/or employees, controlled the Hoist Lift Truck – Loaded Container Handler #28-9347.

55.     That prior to August 15, 2016, the answering Defendant made modifications to the Hoist Lift Truck – Loaded Container Handler #28-9347.

56.     At all times herein mentioned, the answering Defendant failed to maintain safety manual(s), parts manual(s), and/or operator manual(s) within the Hoist Lift Truck – Loaded Container Handler #28-9347, as prescribed by law.

57.     At all times herein mentioned, the answering Defendant owned railroad cars, appliances, intermodal containers, freight containers, and/or boxcars at Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

58.     That on August 15, 2016, the answering Defendant owned intermodal container FDXU 532907.

59.     That on August 15, 2016, the answering Defendant controlled intermodal container FDXU 532907.

60.     At all times herein mentioned, the answering Defendant loaded railroad cars, appliances, intermodal containers, freight containers, and/or boxcars at Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

61.     That prior to the application of seal #NSPD-NJ 000376, the answering Defendant, by its agents, servants and/or employees, loaded intermodal container FDXU 532907, in whole or part, with the load/cargo which existed within the intermodal container FDXU 532907 on August 15, 2016.

62.   At all times herein mentioned, the answering Defendant transported railroad cars, appliances, intermodal containers, freight containers, and/or boxcars at Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

63.   That on August 15, 2016, the answering Defendant, by its agents, servants and/or employees, transported intermodal container FDXU 532907 within Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

64.   That on August 15, 2016, Decedent, Jorge L. Gomez, was employed by the answering Defendant.

65.   That on August 15, 2016, Decedent, Jorge L. Gomez, was employed by the answering Defendant as a lift machine-operator/switcher.

66.   That on August 15, 2016, at Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey, Decedent was engaged in the course and scope of his duties as a lift machine-operator/switcher.

67.   That on August 15, 2016, Decedent, Jorge L. Gomez, was employed by the answering Defendant to work at Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

68.   That on August 15, 2016, Decedent, Jorge L. Gomez, was a shared employee of the answering Defendant and one or more of the co-Defendant(s).

69.   At all times herein mentioned, Decedent, Jorge L. Gomez, received direction in his employment from the answering Defendant.

70.   At all times herein mentioned, the answering Defendant controlled Jorge L. Gomez in the performance of his job.

71.   At all times herein mentioned, the answering Defendant had the right to control Jorge L.

Gomez in the performance of his job.

72.     At all times herein mentioned, the answering Defendant dispatched the work of Jorge L. Gomez.

73.     At all times herein mentioned, the answering Defendant informed Jorge L. Gomez of incoming freight.

74.     That on August 15, 2016, at the time of the incident described herein, Decedent was an employee of the answering Defendant for the purposes of FELA jurisdiction.

75.     That on August 15, 2016, at approximately 1:30 P.M., while in the course of his employment, Decedent was in the act of transferring intermodal container FDXU 532907 from railcar DTTX 732196(C) on Track E within Croxton Intermodal Terminal, onto Capacity Jockey Truck #22645, using Hoist Lift Truck – Loaded Container Handler #28-9347.

76.     That on August 15, 2016, at approximately 1:30 P.M., while in the course of his employment, Decedent was in the act of transferring intermodal container FDXU 532907 from railcar DTTX 732196(C) on Track E within Croxton Intermodal Terminal, onto Capacity Jockey Truck #22645, using Hoist Lift Truck – Loaded Container Handler #28-9347 when the boom of the Hoist Lift Truck – Loaded Container Handler #28-9347 and the attached intermodal container FDXU 532907 struck Jorge L. Gomez.

77.     Said incident resulted in the death of Jorge L. Gomez.

78.     At all times herein mentioned, it was the answering Defendant's duty to use ordinary care in furnishing Decedent with a safe place to work.

79.     That on August 15, 2016, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to provide Decedent with a safe place to work.

80.     That on August 15, 2016, in violation of the answering Defendant's duty, the answering

Defendant negligently and carelessly failed to equip, guard, maintain, control, conduct, and/or operate the job site so as to provide a reasonable and adequate protection for the health and safety of its workers and/or employees situated in the railroad terminal.

81.    That on August 15, 2016, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly operated the job site at Croxton Intermodal Terminal.

82.    That on August 15, 2016, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly supervised the job site at Croxton Intermodal Terminal.

83.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to provide Decedent with adequate training.

84.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to provide Decedent with adequate retraining.

85.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to maintain the cranes, hoist equipment and/or loaded container handlers in proper and safe working order.

86.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to maintain Hoist Lift Truck – Loaded Container Handler #28-9347 in proper and safe working order.

87.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly allowed improper and unsafe cranes, hoist equipment, loaded container handlers and/or machinery to exist at Croxton Intermodal Terminal.

88.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly allowed the improper and unsafe Hoist Lift Truck

– Loaded Container Handler #28-9347 to exist at Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

89.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly allowed the use of improper and unsafe cranes, hoist equipment, loaded container handlers and/or machinery to occur at Croxton Intermodal Terminal.

90.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly allowed the use of improper and unsafe Hoist Lift Truck – Loaded Container Handler #28-9347 to occur at Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

91.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly allowed said cranes, hoist equipment, loaded container handlers and/or machinery at Croxton Intermodal Terminal to become defective.

92.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly allowed said Hoist Lift Truck – Loaded Container Handler #28-9347 to become defective.

93.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant improperly maintained said cranes, hoist equipment, loaded container handlers and/or machinery at Croxton Intermodal Terminal.

94.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant improperly maintained the Hoist Lift Truck – Loaded Container Handler #28-9347.

95.    At all times herein mentioned, in violation of the answering Defendant's duty, the

answering Defendant failed to post warnings or give Decedent warning of unsafe, dangerous and hazardous cranes, hoist equipment and/or loaded container handlers at Croxton Intermodal Terminal.

96.     At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant failed to post warnings or give Decedent warning of the Hoist Lift Truck – Loaded Container Handler #28-9347.

97.     At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant failed to reasonably inspect the cranes, hoist equipment and/or loaded container handlers at Croxton Intermodal Terminal.

98.     At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant failed to reasonably inspect the Hoist Lift Truck – Loaded Container Handler #28-9347 at Croxton Intermodal Terminal.

99.     At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant allowed improper construction of the appliances, machinery, and/or railroad lift machines.

100.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant failed to provide adequate railroad lift machines for moving intermodal containers.

101.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant failed to provide the Decedent with reasonable and adequate protection.

102.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant failed to reasonably anticipate that the Decedent could sustain physical injuries by reason of the unsafe and dangerous condition that existed.

103.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant failed to remedy any unsafe conditions all of which Defendant had due notice or, by reasonable inspection thereof, should have had due notice.

104.    That on August 15, 2016, the answering Defendant's failure to provide Decedent with a safe place to work by one or more of the foregoing negligent acts or omissions caused the Decedent's death.

105.    As a consequence, on August 15, 2016, Decedent suffered fear of impending death, conscious pain and suffering, great bodily injury; death; loss of wages and earning capacity; loss of economic benefit and enrichment; and substantial medical, hospital and related expenses.

106.    That by reason of the aforesaid negligence of the answering Defendant, Decedent, prior to his death on August 15, 2016, experienced pre-impact terror, fear, anguish and emotional distress.

107.    The foregoing incident and resulting death of Jorge L. Gomez were caused solely by reason of the carelessness, recklessness, and negligence on the part of the answering Defendant, without any negligence on the part of Decedent contributing thereto.

## COUNT TWO

### AGAINST DEFENDANTS H&M INTERNATIONAL TRANSPORTATION, INC., NORFOLK SOUTHERN CORPORATION, CONSOLIDATED RAIL CORPORATION, TECHNICAL SERVICES INTERNATIONAL, MI-JACK PRODUCTS, INC., HOIST LIFTRUCK MANUFACTURING, LLC., FEDEX FREIGHT, INC., GENERAL CABLE INDUSTRIES, INC. and PMX INDUSTRIES, INC.

### NEGLIGENCE

108.    The allegations set forth in the each of the preceding paragraphs are incorporated by reference as fully set forth herein.

109.    That on August 15, 2016, the answering Defendant conducted business operations at Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey.

110.    That on August 15, 2016, the answering Defendant owned the Hoist Lift Truck – Loaded Container Handler #28-9347.

111.    That on August 15, 2016, the answering Defendant was the lessee of the Hoist Lift Truck – Loaded Container Handler #28-9347.

112.    That on August 15, 2016, the answering Defendant was the lessor of the Hoist Lift Truck – Loaded Container Handler #28-9347.

113.    That on August 15, 2016, the answering Defendant by its agents, employees and/or servants, operated the Hoist Lift Truck – Loaded Container Handler #28-9347.

114.    That on August 15, 2016, the answering Defendant by its agents, employees and/or servants, controlled the Hoist Lift Truck – Loaded Container Handler #28-9347.

115.    At all times herein mentioned, the answering Defendant by its agents, employees and/or servants, designed the Hoist Lift Truck – Loaded Container Handler #28-9347.

116.    At all times herein mentioned, the answering Defendant by its agents, employees and/or servants, manufactured the Hoist Lift Truck – Loaded Container Handler #28-9347.

117.    That on August 15, 2016 and prior thereto, the answering Defendant by its agents, employees and/or servants, repaired the Hoist Lift Truck – Loaded Container Handler #28-9347.

118.    That on August 15, 2016 and prior thereto, the answering Defendant by its agents, employees and/or servants, maintained the Hoist Lift Truck – Loaded Container Handler #28-9347.

119.    That prior to August 15, 2016, the answering Defendant by its agents, employees and/or servants, modified the Hoist Lift Truck – Loaded Container Handler #28-9347.

120.    At all times herein mentioned, the answering Defendant by its agents, employees and/or servants, made changes to the design of the Hoist Lift Truck – Loaded Container Handler #28-

9347 subsequent to its release into the marketplace.

121.    At all times herein mentioned, the answering Defendant owned the Capacity Jockey Truck #22645.

122.    At all times herein mentioned, the answering Defendant was the lessee of the Capacity Jockey Truck #22645.

123.    At all times herein mentioned, the answering Defendant was the lessor of the Capacity Jockey Truck #22645.

124.    At all times herein mentioned, the answering Defendant by its agents, employees and/or servants, operated the Capacity Jockey Truck #22645.

125.    At all times herein mentioned, the answering Defendant by its agents, employees and/or servants, controlled the Capacity Jockey Truck #22645.

126.    At all times herein mentioned, the answering Defendant by its agents, employees and/or servants, maintained the Capacity Jockey Truck #22645.

127.    At all times herein mentioned, the answering Defendant by its agents, employees and/or servants, repaired the Capacity Jockey Truck #22645.

128.    At all times herein mentioned, the answering Defendant owned the intermodal container FDXU 532907.

129.    At all times herein mentioned, the answering Defendant was the lessee of the intermodal container FDXU 532907.

130.    At all times herein mentioned, the answering Defendant was the lessor of the intermodal container FDXU 532907.

131.    That on August 15, 2016, the answering Defendant controlled the intermodal container FDXU 532907.

132.    That the answering Defendant applied seal #NSPD-NJ 000376 to intermodal container FDXU 532907.

133.    At all times herein mentioned, the answering Defendant by its agents, employees and/or servants, transported the intermodal container FDXU 532907 subsequent to the application of seal #NSPD-NJ 000376.

134.    At all times herein mentioned, the answering Defendant by its agents, employees and/or servants, controlled the intermodal container FDXU 532907 subsequent to the application of seal #NSPD-NJ 000376.

135.    At all times herein mentioned, the answering Defendant by its agents, employees and/or servants, maintained the intermodal container FDXU 532907.

136.    At all times herein mentioned, the answering Defendant by its agents, employees and/or servants, repaired the intermodal container FDXU 532907.

137.    Prior to the application of seal #NSPD-NJ 000376, the answering Defendant by its agents, employees and/or servants, loaded, in whole or part, the load/cargo which existed within the intermodal container FDXU 532907 on August 15, 2016.

138.    Prior to the application of seal #NSPD-NJ 000376, the answering Defendant by its agents, employees and/or servants, negligently, carelessly and improperly loaded, in whole or part, the load/cargo which existed within the intermodal container FDXU 532907 on August 15, 2016.

139.    Prior to the application of seal #NSPD-NJ 000376, the answering Defendant, by its agents, employees and/or servants, loaded the copper wires, spools and/or reels, that existed within intermodal container FDXU 532907 on August 15, 2016, prior to the application of seal #NSPD-NJ 000376.

140.    Prior to the application of seal #NSPD-NJ 000376, in violation of the answering

Defendant's duty, the answering Defendant by its agents, employees and/or servants, negligently, carelessly and improperly loaded the copper wires, spools and/or reels that existed within intermodal container FDXU 532907 on August 15, 2016, prior to the application of seal #NSPD-NJ 000376.

141.    Prior to the application of seal #NSPD-NJ 000376, the answering Defendant by its agents, employees and/or servants, determined the positioning of the contents which existed within the intermodal container FDXU 532907 on August 15, 2016.

142.    Prior to the application of seal #NSPD-NJ 000376, the answering Defendant by its agents, employees and/or servants, determined the placement of the contents which existed within the intermodal container FDXU 532907 on August 15, 2016.

143.    That at the time of loading the contents which existed within the intermodal container FDXU 532907 on August 15, 2016, the answering Defendants used a computerized loading system.

144.    That at the time of loading the contents which existed within the intermodal container FDXU 532907 on August 15, 2016, the answering Defendants used the "Citadel" loading system.

145.    At all times herein mentioned, the answering Defendant entered an agreement and/or arrangement to provide and perform certain work, labor and/or services at Croxton Intermodal Terminal located at 125 County Road, Jersey City, New Jersey on or about August 15, 2016.

146.    Prior to the application of seal #NSPD-NJ 000376, it was the duty of the answering Defendant to employ proper load/cargo securement methods.

147.    Prior to the application of seal #NSPD-NJ 000376, it was the duty of the answering Defendant to employ proper load/cargo securement methods to minimize load shifting within intermodal container FDXU 532907 throughout the entire duration said intermodal container was

in transit.

148.    At all times herein mentioned, the answering Defendant failed to implement the use of "dunnage" within intermodal container FDXU 532907, prior to the application of seal #NSPD-NJ 000376.

149.    That on August 15, 2016, no "dunnage" existed within intermodal container FDXU 532907.

150.    At all times herein mentioned, the answering Defendant failed to implement the use of "airbags" within intermodal container FDXU 532907, prior to the application of seal #NSPD-NJ 000376.

151.    That on August 15, 2016, no "airbags" existed within intermodal container FDXU 532907.

152.    At all times herein mentioned, the answering Defendant failed to properly implement the use of "load-bars" within intermodal container FDXU 532907, prior to the application of seal #NSPD-NJ 000376.

153.    At all times herein mentioned, the answering Defendant failed to implement the use of "rubber matting" within intermodal container FDXU 532907, prior to the application of seal #NSPD-NJ 000376.

154.    That on August 15, 2016, no "rubber matting" existed within intermodal container FDXU 532907.

155.    At all times herein mentioned, the answering Defendant failed to implement the use of load/cargo "strapping" within intermodal container FDXU 532907, prior to the application of seal #NSPD-NJ 000376.

156.    That on August 15, 2016, no load/cargo "strapping" existed within intermodal container FDXU 532907.

157.   At all times herein mentioned, the answering Defendant failed to implement the use of load/cargo "blocking" and/or "bracing" within intermodal container FDXU 532907, prior to the application of seal #NSPD-NJ 000376.

158.   That on August 15, 2016, no load/cargo "blocking" and/or "bracing" existed within intermodal container FDXU 532907.

159.   That prior to the application of seal #NSPD-NJ 000376, the answering Defendant made use of inadequate "dunnage", "airbags", "load-bars", "rubber matting", "strapping", "blocking" and/or "bracing".

160.   At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant failed to reasonably inspect the load/cargo, equipment, and/or securement devices that existed within intermodal container FDXU 532907 on August 15, 2016.

161.   At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to maintain the load/cargo, equipment, and/or securement devices that existed within intermodal container FDXU 532907 on August 15, 2016.

162.   At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant improperly maintained the load/cargo, equipment, and/or securement devices that existed within intermodal container FDXU 532907 on August 15, 2016.

163.   At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly allowed improper and unsafe load/cargo, equipment, and/or securement devices to exist within intermodal container FDXU 532907 on August 15, 2016.

164.   At all times herein mentioned, in violation of the answering Defendant's duty, the

answering Defendant negligently and carelessly allowed said load/cargo, equipment, and/or securement devices within intermodal container FDXU 532907 to become defective prior to August 15, 2016.

165.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant failed to post warnings or give Decedent warning of unsafe, dangerous and hazardous load/cargo, equipment, and/or securement devices within intermodal container FDXU 532907.

166.    Prior to the application of seal #NSPD-NJ 000376, it was the duty of the answering Defendant to employ proper packaging methods.

167.    Prior to the application of seal #NSPD-NJ 000376, it was the duty of the answering Defendant to employ proper packaging methods to minimize load shifting within intermodal container FDXU 532907 throughout the entire duration said intermodal container was in transit.

168.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to package the load/cargo that existed within intermodal container FDXU 532907 on August 15, 2016.

169.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly allowed improper and unsafe packaging to exist within intermodal container FDXU 532907 on August 15, 2016.

170.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant improperly packaged the copper wires, spools and/or reels that existed within intermodal container FDXU 532907 on August 15, 2016, prior to the application of seal #NSPD-NJ 000376.

171.    At all times herein mentioned, in violation of the answering Defendant's duty, the

answering Defendant improperly palletized the copper wires, spools and/or reels that existed within intermodal container FDXU 532907 on August 15, 2016, prior to the application of seal #NSPD-NJ 000376.

172.   At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant improperly secured the copper wires, spools and/or reels that existed within intermodal container FDXU 532907 on August 15, 2016, prior to the application of seal #NSPD-NJ 000376.

173.   At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to equip, guard, maintain, control, conduct, and/or operate the job site so as to provide a reasonable and adequate protection for the health and safety of its employees and/or workers.

174.   At all times herein mentioned, it was the answering Defendant's duty to use ordinary care in furnishing Decedent with a safe place to work.

175.   At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly supervised the job site at Croxton Intermodal Terminal.

176.   At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly operated the job site at Croxton Intermodal Terminal.

177.   At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly conducted business operations at the job site at Croxton Intermodal Terminal.

178.   At all times herein mentioned, in violation of the answering Defendant's duty, the

answering Defendant negligently and carelessly failed to provide Decedent with adequate training.

179.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to provide Decedent with adequate retraining.

180.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to maintain the cranes, hoist equipment and/or loaded container handlers at Croxton Intermodal Terminal in proper and safe working order.

181.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant improperly maintained said cranes, hoist equipment, loaded container handlers and/or machinery at Croxton Intermodal Terminal.

182.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant improperly maintained the Hoist Lift Truck – Loaded Container Handler #28-9347.

183.    That on August 15, 2016, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to maintain the Hoist Lift Truck – Loaded Container Handler #28-9347 in proper and safe working order.

184.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly allowed improper and unsafe cranes, hoist equipment, loaded container handlers and/or machinery to exist at Croxton Intermodal Terminal.

185.    That on August 15, 2016, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly allowed Hoist Lift Truck – Loaded Container Handler #28-9347 to exist at Croxton Intermodal Terminal.

186.    At all times herein mentioned, in violation of the answering Defendant's duty, the

answering Defendant negligently and carelessly allowed said cranes, hoist equipment, loaded container handlers and/or machinery at Croxton Intermodal Terminal to become defective.

187.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly allowed Hoist Lift Truck – Loaded Container Handler #28-9347 to become defective.

188.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant failed to post warnings or give Decedent warning of unsafe, dangerous and hazardous cranes, hoist equipment and/or loaded container handlers at Croxton Intermodal Terminal.

189.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant failed to post warnings or give Decedent warning of the Hoist Lift Truck – Loaded Container Handler #28-9347.

190.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant failed to reasonably inspect the cranes, hoist equipment and/or loaded container handlers at Croxton Intermodal Terminal.

191.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant failed to reasonably inspect the Hoist Lift Truck – Loaded Container Handler #28-9347.

192.    That prior to August 15, 2016, the answering Defendant, by its agents, employees and/or servants, made modifications to the Hoist Lift Truck – Loaded Container Handler #28-9347.

193.    At all times herein mentioned, the answering Defendant failed to provide its employees with retraining subsequent to said modifications to the Hoist Lift Truck – Loaded Container Handler #28-9347.

194.    At all times herein mentioned, the answering Defendant failed to provide Jorge L. Gomez with retraining subsequent to said modifications to the Hoist Lift Truck – Loaded Container Handler #28-9347.

195.    That on August 15, 2016, the answering Defendant failed to properly maintain safety manual(s), parts manual(s), and/or operator manual(s) within the Hoist Lift Truck – Loaded Container Handler #28-9347, as prescribed by law.

196.    That on August 15, 2016, no safety manual(s), parts manual(s), and/or operator manual(s) existed within the Hoist Lift Truck – Loaded Container Handler #28-9347.

197.    At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant negligently, carelessly and improperly loaded railroad cars, appliances, intermodal containers, freight containers, and/or boxcars.

198.    The answering Defendant's failure to provide Decedent with a safe place to work by one or more of the foregoing negligent acts or omissions caused the Decedent's death.

199.    As a consequence, Decedent suffered fear of impending death; conscious pain and suffering; great bodily injury; death; loss of wages and earning capacity; loss of economic benefit and enrichment; and substantial medical, hospital and related expenses.

200.    That by reason of the aforesaid negligence of the answering Defendant, prior to his death on August 15, 2016, Decedent experienced pre-impact terror; fear; anguish; and emotional distress.

201.    The foregoing incident and resulting death of Jorge L. Gomez were caused solely by reason of the carelessness, recklessness, and negligence on the part of the answering Defendant without any negligence on the part of Decedent contributing thereto.


*(remainder of this page intentionally left blank)*

**COUNT THREE**

**AGAINST DEFENDANTS TECHNICAL SERVICES INTERNATIONAL, MI-JACK
PRODUCTS, INC., HOIST LIFTRUCK MANUFACTURING, LLC.,**

**DESIGN DEFECT - PURSUANT TO NEW JERSEY'S PRODUCT LIABILITY ACT,
N.J.S.A; 2A:58C-2 *et seq.***

202.    The allegations set forth in the each of the preceding paragraphs are incorporated by reference as fully set forth herein.

203.    That the answering Defendant is the researcher, developer, manufacturer, distributor, marketer, promoter, supplier and seller of the Hoist Lift Truck – Loaded Container Handler #28-9347, which is defective and unreasonably dangerous to its users.

204.    The Hoist Lift Truck – Loaded Container Handler #28-9347 is defective in its design or formulation in that it is not reasonably fit, suitable or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.

205.    The Hoist Lift Truck – Loaded Container Handler #28-9347 is defective in its design or formulation in that it lacks efficacy and/or poses a greater likelihood of injury than other cranes, hoist equipment, loaded container handlers and/or similar machinery on the market and is more dangerous than ordinary consumers can reasonably foresee.

206.    The defective condition of the Hoist Lift Truck – Loaded Container Handler #28-9347 renders it unreasonably dangerous, and the Hoist Lift Truck – Loaded Container Handler #28-9347 was in this defective condition at the time it left the hands of the answering Defendant.

207.    The Hoist Lift Truck – Loaded Container Handler #28-9347 was expected to and did reach consumers without substantial change in the condition in which it was designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied and otherwise released into the stream of commerce.

208.    Jorge L. Gomez was unaware of the significant hazards and defects in the Hoist Lift Truck – Loaded Container Handler #28-9347.

209.    Jorge L. Gomez was an ordinary user of the Hoist Lift Truck – Loaded Container Handler #28-9347.

210.    The Hoist Lift Truck – Loaded Container Handler #28-9347 was unreasonably dangerous in that it was more dangerous than would be reasonably contemplated by the ordinary user.

211.    During the period that Plaintiff was using the Hoist Lift Truck – Loaded Container Handler #28-9347, the machine was being utilized in a manner that was intended by the answering Defendant.

212.    At the time that Jorge L. Gomez received the Hoist Lift Truck – Loaded Container Handler #28-9347, it was represented to be safe and free from latent defects.

213.    The answering Defendant is strictly liable to Plaintiff for designing, manufacturing, and placing into the stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable uses at the time it left the control of the answering Defendant because of the design defects.

214.    The answering Defendant knew or should have known of the danger associated with the use of the Hoist Lift Truck – Loaded Container Handler #28-9347, as well as the defective nature of the Hoist Lift Truck – Loaded Container Handler #28-9347, but has continued to design, manufacture, sell, distribute, marker, promote and/or supply the Hoist Lift Truck – Loaded Container Handler #28-9347 so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by the Hoist Lift Truck – Loaded Container Handler #28-9347.

215.    That the answering Defendant was aware of a reasonable alternative design for the Hoist

Lift Truck – Loaded Container Handler #28-9347 at the time of its introduction to the market.

216.    As a consequence, Decedent suffered fear of impending death; conscious pain and suffering; great bodily injury; death; loss of wages and earning capacity; loss of economic benefit and enrichment; and substantial medical, hospital and related expenses.

217.    That by reason of the aforesaid negligence of the answering Defendant, prior to his death on August 15, 2016, Decedent experienced pre-impact terror; fear; anguish; and emotional distress.

218.    The foregoing incident and resulting death of Jorge L. Gomez were caused solely by reason of the carelessness, recklessness, and negligence on the part of the answering Defendant without any negligence on the part of Decedent contributing thereto.

219.    Plaintiff(s) are entitled to recover punitive damages and damages for the pain and suffering caused to Decedent from the acts and omissions of the Defendant as specifically pled herein, including, without limitation, punitive damages pursuant to N.J.S.A.; 2A:58C.

## COUNT FOUR
### AGAINST DEFENDANTS TECHNICAL SERVICES INTERNATIONAL, MI-JACK PRODUCTS, INC., HOIST LIFTRUCK MANUFACTURING, LLC.,

### MANUFACTURING DEFECT - PURSUANT TO NEW JERSEY'S PRODUCT LIABILITY ACT, N.J.S.A; 2A:58C-2 *et seq.*

220.    The allegations set forth in the each of the preceding paragraphs are incorporated by reference as fully set forth herein.

221.    At all relevant times, the answering Defendant designed the Hoist Lift Truck – Loaded Container Handler #28-9347.

222.    At all relevant times, the answering Defendant was a manufacturer with respect to the high capacity liftrucks, including but not limited to the Hoist Lift Truck – Loaded Container Handler #28-9347.

223.    At all relevant times, the answering Defendant was a manufacturer of the Hoist Lift Truck

– Loaded Container Handler #28-9347.

224.    At all relevant times, the answering Defendant was a seller with respect to the manufactured high capacity liftrucks, including but not limited to the Hoist Lift Truck – Loaded Container Handler #28-9347.

225.    At all relevant times, the answering Defendant was a seller with respect to the high capacity liftrucks, including but not limited to the Hoist Lift Truck – Loaded Container Handler #28-9347.

226.    At all relevant times, the answering Defendant distributed the high capacity liftrucks, including but not limited to the Hoist Lift Truck – Loaded Container Handler #28-9347.

227.    At all relevant times, the answering Defendant assembled the high capacity liftrucks, including but not limited to the Hoist Lift Truck – Loaded Container Handler #28-9347.

228.    That the Hoist Lift Truck – Loaded Container Handler #28-9347 was defective when the Hoist Lift Truck – Loaded Container Handler #28-9347 left the answering Defendant's control.

229.    That on August 15, 2016, the Hoist Lift Truck – Loaded Container Handler #28-9347 caused injury to Jorge L. Gomez.

230.    That on August 15, 2016, Decedent, Jorge L. Gomez, was a reasonably foreseeable user of the Hoist Lift Truck – Loaded Container Handler #28-9347.

231.    That on August 15, 2016, the harm suffered by Jorge L. Gomez was caused by an unsafe aspect of the Hoist Lift Truck – Loaded Container Handler #28-9347 that is an inherent characteristic of the product and that would not be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended.

232.    That on August 15, 2016, the harm suffered by Jorge L. Gomez was caused by an unsafe aspect of the Hoist Lift Truck – Loaded Container Handler #28-9347 and the product was not

accompanied by an adequate warning or instruction.

233.    That prior to August 15, 2016, the answering Defendant failed to warn unsuspecting users of the Hoist Lift Truck – Loaded Container Handler #28-9347 that the product can potentially cause injury.

234.    That prior to August 15, 2016, the answering Defendant failed to warn unsuspecting user, Jorge L. Gomez, that the Hoist Lift Truck – Loaded Container Handler #28-9347 could potentially cause injury.

235.    The Hoist Lift Truck – Loaded Container Handler #28-9347 was not fit for its ordinary purposes.

236.    That on August 15, 2016, and including at the time of the incident herein complained of, the Hoist Lift Truck – Loaded Container Handler #28-9347 was being put to use for the purpose for which it is designed.

237.    That on August 15, 2016, and including at the time of the incident herein complained of, the Hoist Lift Truck – Loaded Container Handler #28-9347 was being put to use to stack/unstack loaded and/or unloaded intermodal containers.

238.    That at the time of the accident, the uses to which the Hoist Lift Truck – Loaded Container Handler #28-9347 was put were reasonably foreseeable at the time the answering Defendant designed the system.

239.    That the manufacture of the Hoist Lift Truck – Loaded Container Handler #28-9347 substantially and/or completely accorded with the designs and specifications of the answering Defendant.

240.    That prior to August 15, 2016, there were substantial modifications or alterations made to the Hoist Lift Truck – Loaded Container Handler #28-9347 after its construction, pursuant to the

answering Defendant's original specifications.

241.   That prior to August 15, 2016, there were minimal and/or diminimus modifications or alterations made to the Hoist Lift Truck – Loaded Container Handler #28-9347 after its construction, pursuant to the answering Defendant's original specifications.

242.   That prior to August 15, 2016, the answering Defendant made substantial modifications or alterations to the Hoist Lift Truck – Loaded Container Handler #28-9347.

243.   That prior to August 15, 2016, the answering Defendant made minimal and/or diminimus modifications or alterations to the Hoist Lift Truck – Loaded Container Handler #28-9347.

244.   That the Hoist Lift Truck – Loaded Container Handler #28-9347 was not reasonably safe in light of its intended use, even when manufactured per the answering Defendant's design and specifications.

245.   That the incident of August 15, 2016, occurred due to the answering Defendant's defective manufacture of the Hoist Lift Truck – Loaded Container Handler #28-9347.

246.   That any defective conditions causing the Hoist Lift Truck – Loaded Container Handler #28-9347 to be in an unreasonably dangerous or unsafe condition were due to defects created and/or which should have been known to the answering Defendant during the design, fabrication and/or assembly of said equipment.

247.   As a consequence, Decedent suffered fear of impending death; conscious pain and suffering; great bodily injury; death; loss of wages and earning capacity; loss of economic benefit and enrichment; and substantial medical, hospital and related expenses.

248.   That by reason of the aforesaid negligence of the answering Defendant, prior to his death on August 15, 2016, Decedent experienced pre-impact terror; fear; anguish; and emotional distress.

249.   The foregoing incident and resulting death of Jorge L. Gomez were caused solely by reason

of the carelessness, recklessness, and negligence on the part of the answering Defendant without any negligence on the part of Decedent contributing thereto.

250.    Plaintiff(s) are entitled to recover punitive damages and damages for the pain and suffering caused to Decedent from the acts and omissions of the Defendant as specifically pled herein, including, without limitation, punitive damages pursuant to N.J.S.A.; 2A:58C.

## COUNT FIVE

### AGAINST DEFENDANTS TECHNICAL SERVICES INTERNATIONAL, MI-JACK PRODUCTS, INC., HOIST LIFTRUCK MANUFACTURING, LLC.,

### FAILURE TO WARN - PURSUANT TO NEW JERSEY'S PRODUCT LIABILITY ACT, N.J.S.A; 2A:58C-2 *et seq.*

251.    The allegations set forth in the each of the preceding paragraphs are incorporated by reference as fully set forth herein.

252.    The answering Defendant researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the Hoist Lift Truck – Loaded Container Handler #28-9347, and in the course of same, directly advertised or marketed the machine to the public, users/consumers, and persons responsible for users/consumers, and therefore had a duty to warn of the risks associated with the use of the Hoist Lift Truck – Loaded Container Handler #28-9347.

253.    The Hoist Lift Truck – Loaded Container Handler #28-9347 was under the exclusive control of the answering Defendant as aforesaid, and was unaccompanied by appropriate warnings regarding all possible dangers associated with the use of the Hoist Lift Truck – Loaded Container Handler #28-9347.

254.    The answering Defendant has failed to timely and reasonably warn of material facts regarding the safety and efficacy of the Hoist Lift Truck – Loaded Container Handler #28-9347 so that no person and/or entity would employ the use of the Hoist Lift Truck – Loaded Container

Handler #28-9347, had those facts been made known to such users and consumers.

255.    The answering Defendant has failed to perform or otherwise facilitate adequate testing in that such testing would have shown that the Hoist Lift Truck – Loaded Container Handler #28-9347 posed a serious and potentially life-threatening danger with respect to which full and proper warning accurately and fully reflecting said danger, scope and severity should have been made to the public, users/consumers, and persons responsible for users/consumers.

256.    The Hoist Lift Truck – Loaded Container Handler #28-9347, which was researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce by the answering Defendant, was defective due to inadequate post-marketing warnings and/or instruction because, after the answering Defendant knew or should have known of the risks of serious and/or potentially life-threatening danger from the use of the Hoist Lift Truck – Loaded Container Handler #28-9347, the answering Defendant failed to provide adequate warnings to the public, users/consumers, and persons responsible for users/consumers, including Jorge L. Gomez, and continued to market the Hoist Lift Truck – Loaded Container Handler #28-9347 aggressively.

257.    As a consequence, Decedent suffered fear of impending death; conscious pain and suffering; great bodily injury; death; loss of wages and earning capacity; loss of economic benefit and enrichment; and substantial medical, hospital and related expenses.

258.    That by reason of the aforesaid negligence of the answering Defendant, prior to his death on August 15, 2016, Decedent experienced pre-impact terror; fear; anguish; and emotional distress.

259.    The foregoing incident and resulting death of Jorge L. Gomez were caused solely by reason of the carelessness, recklessness, and negligence on the part of the answering Defendant without any negligence on the part of Decedent contributing thereto.

260.     Plaintiff(s) are entitled to recover punitive damages and damages for the pain and suffering caused to Decedent from the acts and omissions of the Defendant as specifically pled herein, including, without limitation, punitive damages pursuant to N.J.S.A.; 2A:58C.

## COUNT SIX

### AGAINST DEFENDANTS H&M INTERNATIONAL TRANSPORTATION, INC., NORFOLK SOUTHERN CORPORATION, CONSOLIDATED RAIL CORPORATION, TECHNICAL SERVICES INTERNATIONAL, MI-JACK PRODUCTS, INC., HOIST LIFTRUCK MANUFACTURING, LLC., FEDEX FREIGHT, INC., GENERAL CABLE INDUSTRIES, INC. and PMX INDUSTRIES, INC.

### WRONGFUL DEATH PURSUANT TO NEW JERSEY'S WRONGFUL DEATH ACT, N.J.S.A; 2A:31-1

261.     The allegations set forth in the each of the preceding paragraphs are incorporated by reference as fully set forth herein.

262.     As a result of the acts and/or omissions of the answering Defendant as set forth herein, Decedent suffered serious emotional and bodily injuries resulting in his death on August 15, 2016.

263.     Plaintiff, Carmen Rosa Gomez, is entitled to recover damages Decedent would have if he were living, as a result of the acts and/or omissions of the answering Defendant as specifically pled herein pursuant to N.J.S.A.;2A:15-3.

264.     Plaintiff(s) are entitled to recover punitive damages and damages for the pain and suffering caused to Decedent from the acts and omissions of the Defendant as specifically pled herein, including, without limitation, punitive damages pursuant to N.J.S.A.; 2A:15-3.

*(remainder of this page intentionally left blank)*

## COUNT SEVEN

### AGAINST DEFENDANTS H&M INTERNATIONAL TRANSPORTATION, INC., NORFOLK SOUTHERN CORPORATION, CONSOLIDATED RAIL CORPORATION, TECHNICAL SERVICES INTERNATIONAL, MI-JACK PRODUCTS, INC., HOIST LIFTRUCK MANUFACTURING, LLC., FEDEX FREIGHT, INC., GENERAL CABLE INDUSTRIES, INC. and PMX INDUSTRIES, INC.

### SURVIVAL ACTION PURSUANT TO NEW JERSEY'S SURVIVAL ACT, N.J.S.A; 2A:14-5 AND N.J.S.A; 2A:15-3

265.    The allegations set forth in the each of the preceding paragraphs are incorporated by reference as fully set forth herein.

266.    As a result of the actions and inactions of the answering Defendant, Decedent was caused to suffer before his death.

267.    Plaintiff, Carmen Rosa Gomez, individually and on behalf of the Estate of Jorge L. Gomez, seeks damages compensable under the Survival Act, N.J.S.A.; 2A:14-5 (or any successor statute) against the answering Defendant.

268.    Plaintiff, Carmen Rosa Gomez, individually and on behalf of the Estate of Jorge L. Gomez, in her/their own right, seek damages compensable under the Survival Act, N.J.S.A.; 2A:15-3 (or any successor statute) against the answering Defendant.

## COUNT EIGHT

### AGAINST DEFENDANTS H&M INTERNATIONAL TRANSPORTATION, INC., NORFOLK SOUTHERN CORPORATION, CONSOLIDATED RAIL CORPORATION, TECHNICAL SERVICES INTERNATIONAL, MI-JACK PRODUCTS, INC., HOIST LIFTRUCK MANUFACTURING, LLC., FEDEX FREIGHT, INC., GENERAL CABLE INDUSTRIES, INC. and PMX INDUSTRIES, INC.

### LOSS OF CONSORTIUM

269.    The allegations set forth in the each of the preceding paragraphs are incorporated by reference as fully set forth herein.

270.    At the time of the aforementioned incident, Decedent, Jorge L. Gomez and Carmen Rosa

Gomez were married.

271.    On September 7, 2016, letters of Administration Ad Prosequen-dum were issued to Carmen Rosa Gomez, the surviving spouse of Jorge L. Gomez, pursuant to N.J.S.A. 3B:10-11, authorizing her to institute an action or proceeding or make a claim (as Administrator Ad Prosequen-dum) for the Decedent's wrongful death.

272.    As a result of the wrongful and negligent acts of the answering Defendant, Decedent's surviving family, kin and heirs at law suffered and will continue to suffer in the future, severe mental anguish, emotional pain and suffering, loss of society, loss of companionship, loss of comfort, loss of protection, loss of parental care, loss of filial care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, loss of education, loss of economic support, loss of affection, loss of assistance, and loss of fellowship, all to the detriment of their familial relationship.

273.    That as a result of the wrongful and negligent acts of the answering Defendant, Plaintiff, Carmen Rosa Gomez, individually, was caused to suffer, and will continue to suffer in the future, severe mental anguish, emotional pain and suffering, loss of consortium, loss of society, loss of companionship, loss of comfort, loss of protection, loss of marital care, loss of filial care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, loss of education, loss of economic support, loss of affection, loss of assistance, loss of fellowship, and loss of conjugal fellowship, all to the detriment of their marital relationship.

274.    The foregoing incident and resulting death of Jorge L. Gomez were caused solely by reason of the carelessness, recklessness, and negligence on the part of the answering Defendant, without any negligence on the part of Decedent contributing thereto.

## COUNT NINE

### AGAINST DEFENDANTS H&M INTERNATIONAL TRANSPORTATION, INC., NORFOLK SOUTHERN CORPORATION, CONSOLIDATED RAIL CORPORATION, TECHNICAL SERVICES INTERNATIONAL, MI-JACK PRODUCTS, INC., HOIST LIFTRUCK MANUFACTURING, LLC., FEDEX FREIGHT, INC., GENERAL CABLE INDUSTRIES, INC. and PMX INDUSTRIES, INC.

### PUNITIVE DAMAGES

275.    The allegations set forth in the each of the preceding paragraphs are incorporated by reference as fully set forth herein.

276.    At all times herein mentioned, the answering Defendant was aware that the Hoist Lift Truck – Loaded Container Handler #28-9347 was unfit for its intended purpose.

277.    On August 15, 2016, the answering Defendant was aware that the Hoist Lift Truck – Loaded Container Handler #28-9347 was unfit for its intended purpose, but maliciously, oppressively and/or recklessly allowed Jorge L. Gomez to operate same.

278.    At all times herein mentioned, the answering Defendant maliciously, oppressively and/or recklessly failed to remove unfit and/or inadequate cranes, hoist equipment, loaded container handlers and/or machinery from use at Croxton Intermodal Terminal.

279.    At all times herein mentioned, the answering Defendant maliciously, oppressively and/or recklessly failed to remove the Hoist Lift Truck – Loaded Container Handler #28-9347 from its operations at Croxton Intermodal Terminal.

280.    At all times herein mentioned, the answering Defendant maliciously, oppressively and/or recklessly misrepresented the merchantability of its manufactured vehicles, including but not limited to the Hoist Lift Truck – Loaded Container Handler #28-9347 and its likeness.

281.    At all times herein mentioned, the answering Defendant maliciously, oppressively and/or recklessly omitted material facts regarding the Hoist Lift Truck – Loaded Container Handler #28-

9347 and its likeness.

282.   That the answering Defendant knowingly made false representations and concealed material facts regarding the Hoist Lift Truck – Loaded Container Handler #28-9347 and its likeness.

283.   At all times herein mentioned, the answering Defendant maliciously, oppressively and/or recklessly failed to employ reasonable cargo/load securement methods.

284.   At all times herein mentioned, the answering Defendant maliciously, oppressively and/or recklessly failed to employ required cargo/load securement methods.

285.   At all times herein mentioned, the answering Defendant maliciously, oppressively and/or recklessly loaded, in whole or part, the load/cargo which existed within the intermodal container FDXU 532907 on August 15, 2016.

286.   At all times herein mentioned, the answering Defendant maliciously, oppressively and/or recklessly failed to employ required cargo/load packaging methods.

287.   At all times herein mentioned, the answering Defendant's conduct that harmed Jorge L. Gomez was malicious, oppressive or in reckless disregard of Jorge L. Gomez's rights.

288.   That the acts and omissions of the answering Defendant, with respect to their actions at issue in this Complaint, were outrageous and/or undertaken with reckless indifference to the rights and interests of Jorge L. Gomez and other employees situated in the railroad terminal.

289.   That the conduct of the answering Defendant, it's agents, servants and/or employees evinces a high degree of moral culpability and was wanton, willful, reckless and grossly negligent such that exemplary punitive damages are warranted.

290.   That the conduct of the answering Defendant, it's agents, servants and/or employees was driven by evil motive or intent and/or involved a reckless or callous indifference to the

constitutional rights of others.

291.    That by reason of the egregious conduct, Plaintiff is entitled to exemplary and punitive

damages in a monetary amount exceeding the jurisdictional limits of all lower courts which would

otherwise have jurisdiction.

## PRAYER FOR RELIEF

WHEREFORE, Carmen Rosa Gomez, individually, and as Administrator Ad Prosequen-

dum of the Estate of Jorge L. Gomez, Deceased, demands upon H&M International Transportation,

Inc., Norfolk Southern Corporation, Consolidated Rail Corporation, Technical Services

International, Mi-Jack Products, Inc., Hoist Liftruck Manufacturing, LLC., FedEx Freight, Inc.,

General Cable Industries, Inc. and PMX Industries, Inc. the following:

   a.      actual, compensatory and statutory damages;

   b.      punitive damages as allowed by law;

   c.      pre and post-judgement interest as allowed by law;

   d.      injunctive relief;

   e.      an award of attorneys' fees as allowed by law;

   f.      an award of taxable costs; and

   g.      any and all such further relief as this Court deems just and proper.


*(remainder of this page intentionally left blank)*

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b)(1) and 38 (c) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
      January 10, 2017

Respectfully,

LIAKAS LAW, P.C.
*Attorneys for Plaintiff*

/s/ Stephen J. Liakas, Esq.
By: Stephen J. Liakas, Esq.
N.J. Attorney ID: 030222011
65 Broadway, Suite 1101
New York, New York
(212) 937-7765
SL@Liakaslaw.com