**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| |
|---|
| CARMEN ROSA GOMEZ, Individually, and as Administrator Ad Prosequen-dum of the Estate of Jorge L. Gomez, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> H&M INTERNATIONAL TRANSPORTATION, INC., <br><br> Defendant. |

Civil Action No.: 17-231 (JLL)

**OPINION**

**LINARES**, Chief District Judge.

Pending before this Court are two motions to dismiss Plaintiff's Amended Complaint (ECF No. 47) filed in the above-captioned action. On July 5, 2017, Defendant Hoist Liftruck Manufacturing, Inc. ("Hoist") moved to dismiss Counts Two (in part) and Four of the Amended Complaint. (ECF No. 56). Thereafter, on July 13, 2017, Defendants Technical Services International ("TSI") and Mi-Jack Products, Inc. ("Mi-Jack") (collectively, "TSI/Mi-Jack") jointly moved to dismiss the claims asserted against them. (ECF No. 58). On August 8, 2017, Plaintiff opposed both motions. (ECF Nos. 63, 64), and Hoist and TSI/Mi-Jack have replied to same (ECF Nos. 68, 69). Non-moving Defendants Norfolk South, H&M International Transportation, Inc. ("H&M"), and FedEx Freight, Inc. ("FedEx") have weighed in on the pending motions. (ECF Nos. 62, 65, 66, 67)[1]. The Court has reviewed all papers filed in support of and in opposition to

---

[1] While the Court does not explicitly reference these Non-Moving Defendants' briefs in this Opinion, the Court has reviewed each filing, and notes that the arguments presented therein are echoed by the Moving Defendants, and thus are nevertheless addressed by the Court herein.

1

the pending motions, and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the Court grants in part and denies in part Hoist's motion to dismiss, and denies TSI/Mi-Jack's motion to dismiss.

I. **Background**

Plaintiff Carmen Rosa Gomez ("Plaintiff") is the surviving wife of decedent Jorge L. Gomez. (ECF No. 47, "Am. Compl." ¶ 1). This action arises out of an incident that occurred at the Croxton Intermodal Terminal (the "Terminal") in Jersey City, New Jersey. (Id. ¶¶ 3, 17). Plaintiff alleges that on August 15, 2016, Mr. Gomez was working at the Terminal "as a lift/machine operator." (Id. ¶ 3). On that date, "[Mr. Gomez] was operating a Hoist Lift Truck – Loaded Container Handler #28-9347 (hereinafter the 'Hoist Lift Truck') during the course of his employment by H&M International at Croxton Intermodal Terminal . . . ." (Id. ¶ 17). Plaintiff alleges that "[w]hile [Mr. Gomez] was in the process of off-loading an intermodal container bearing serial number FDXU 532907 (hereinafter the "Intermodal Container") the Hoist Lift Truck collapsed under the weight of the Intermodal Container, and as a result, the Decedent was crushed and died at the scene of the accident . . . ." (Id.).

**A. Defendant Hoist Lift Truck**

According to the Amended Complaint, Defendant Hoist Liftruck Manufacturing, Inc. is the manufacturer of the Hoist Lift Truck which Decedent was operating at the time of his death. (Am. Compl. ¶ 27). Plaintiff alleges that Defendant H&M International (the Decedent's employer), an agent of Defendant Norfolk Southern, and Defendant Consolidated Rail (collectively, the "Rail Defendants"), was responsible for "providing the 'operational activity' of the railroad at Croxton Terminal, including overseeing the offloading of intermodal containers,

receiving incoming trains, moving and preparing the railroad trailers on and off these trains to a storage area, and moving and preparing the railroad trailers from a storage area to the outbound trains heading to off-site destinations." (Id. ¶ 22). Plaintiff further alleges that prior to Mr. Gomez's death, "the Rail Defendants were aware of deficiencies pertaining to the gallows and spreader of the Hoist Lift Truck, including but not limited to these components 'cracking' due to material fatigue, but failed to remedy same." (Id. ¶ 26). Upon learning of these deficiencies, the Rail Defendants contacted Hoist. (Id. ¶ 27). However, "rather than discontinuing the use of the Hoist Lift Truck or replacing same, Norfolk Southern and Hoist came to an Agreement . . . whereby Hoist was to refurbish, replace and provide all repairs to the spreader and gallows on the Hoist Lift Truck free of charge and provide Norfolk Southern with an extended warranty on the spreader and gallows for 15 years from the date of the replacement or refurbishment." (Id.).[2] Plaintiffs further allege that Hoist did, in fact, "ma[ke] repairs and modifications to the Hoist Lift Truck." (Id. ¶ 28). However, Plaintiffs plead that the Rail Defendants failed to re-train the Decedent after Hoist made said repairs and modification. (Id.).

Plaintiffs have attached a copy of the Agreement to the Amended Complaint. (Am. Compl., Exh. B). The Agreement, dated February 11, 2013, is written by the Danielle Brenner, "Senior Managing Purchaser" of Norfolk Southern Corporation to the President of Hoist. (Id.). In said Agreement, Norfolk offers Hoist "amended counter-proposals" in response to an e-mail from Hoist. (Id.). Those counter-proposals are as follows:

1. Hoist Lift will refurbish or replace the spreader and gallows on all four machines, with the refurbished or replaced spreader and gallows replacing hoses with bent tubes, and with each machine staying in service until the

---

[2] The Amended Complaint cites to Exhibit A of the pleading in support of the presence of said Agreement. (See id.). However, as far as the Court can tell, Exhibit B contains the Agreement.

3

replacement gallows and spreader are on-hand (i.e., at least one replacement gallows and spreader will be required). . . .

2. Hoist Lift will provide complete parts and maintenance for the LCH-3-WTP-I, with such parts and maintenance manuals updated to address the modifications addressed in item #1 above. These manuals, accompanied by a complete set in electronic form, are to be distributed to Norfolk Southern's lift machine repair vendors . . . .

3. Hoist Lift will extend all warranties covering the four machines . . . .

4. Hoist Lift will provide an extended warranty on the spreader and the gallows on each of the four machines for 15 years from the date of installation or refurbishment of the respective component. Hoist will be responsible for all repairs required to be performed on these components during such 15-year period including, but not limited to, repairs required due to cracking from material fatigue.

Hoist has not disputed the validity of this Agreement.

### B. Defendants TSI and Mi-Jack

According to Plaintiff, Moving Defendant TSI is the agent of Moving Defendant Mi-Jack. (Id. ¶ 68). During the relevant time period, Plaintiff alleges that Mi-Jack acted through TSI in "provid[ing] service, maintenance, repair, and parts to the hoist Lift Truck." (Id.). Specifically, TSI/Mi-Jack allegedly "had the duty to assemble and/or was responsible for and did maintain and service the Hoist Lift Truck, including performing daily maintenance as well as planned maintenance to the Hoist Lift Truck." (Id. ¶ 69). More specifically, Plaintiff alleges that TSI/Mi-Jack "had a duty to maintain the Hoist Lift Truck in a reasonably safe and suitable condition," that TSI/Mi-Jack "failed to properly maintain, repair and/or modify the Hoist Lift Truck," and that TSI/Mi-Jack "negligently and carelessly inspected the Hoist Lift Truck and allowed the Hoist Lift Truck to become dangerous and defective." (Id. ¶¶ 70-72). Plaintiffs alleges that the aforementioned failures of TSI/Mi-Jack resulted in the collapse of the Hoist Lift Truck which killed Mr. Gomez. (Id. ¶¶ 73-74).

### C. Allegations

Against this background, Plaintiff filed the instant action on January 12, 2017, asserting claims in her own name and on behalf of Mr. Gomez's estate. (ECF No. 1). Plaintiff asserts claims against a number of Defendants, each of which appear to be business entities involved in the commercial railroad industry. On April 24, 2017, this Court entered an Opinion and Order that granted Defendant Hoist's motion to dismiss the complaint. (ECF Nos. 39, 40). Plaintiff filed an Amended Complaint on May 5, 2017. (ECF No. 47). Specifically, Plaintiff asserts claims against nine Defendants, including the Moving Defendants. The Court will discuss herein only those claims that are relevant to the pending motions.

In Count Two of the Amended Complaint, Plaintiff asserts a claim against Hoist for design defect pursuant to N.J.S.A. 2A:58C-2 *et seq.* (Am. Compl. at 7-8). In Count Four of the Amended Complaint, Plaintiff asserts a claim of negligence against each of the Moving Defendants—that is, against Hoist, TSI and Mi-Jack (collectively, the "Moving Defendants")—among other non-moving Defendants. (Id. at 11-15). Plaintiff also asserts claims against the Moving Defendants for wrongful death pursuant to N.J.S.A. 2A:31-1 (Count Five), survival action pursuant to N.J.S.A. 2A:15-3 (Count Six), and for loss of consortium (Count Seven).

Defendant Hoist now moves to dismiss Counts Two (in part) and Four of the Amended Complaint (ECF No. 56), while Defendants TSI/Mi-Jack move to dismiss all claims asserted against them (ECF No. 58). Plaintiff, as well as non-moving Defendants Norfolk South, H&M, and FedEx have opposed or otherwise weighed-in on the pending motions. (ECF Nos. 62, 65, 66, 67). The Moving Defendants have replied to those filings. (ECF Nos. 68, 69). This motion is now ripe for the Court's adjudication.

## II. Legal Standard

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## III. Discussion

### A. Hoist's Motion to Dismiss Count Two

Plaintiff has labeled Count Two of the Amended Complaint as "Design Defect, pursuant to N.J.S.A. 2A:58C-2 *et seq*." (Am. Compl. at 7). Notwithstanding this characterization of Count Two as asserting a claim for "Design Defect," that Count includes allegations of "manufacturing deficiencies" as well as design deficiencies. Specifically, Plaintiff alleges that "Hoist designed and manufactured the Hoist Lift Truck using metal components, including the spreader, gallows, mast, mast hinge and mast hinge bolts, which were of inadequate grade and/or yield strength, rendering the Hoist Lift Truck unable to withstand its maximum weight capacity." (Id. ¶ 36). Plaintiff further alleges that "[d]ue to the collective design and manufacturing deficiencies of the spreader, gallows, mast hinge, mast and mast hinge bolts, the Hoist Lift Truck was unable to safely offload the Intermodal Container, causing the Fatal Incident." (Id. ¶ 41). Finally, Plaintiff pleads that Hoists' alleged failure to properly manufacture and design the Hoist Lift Truck "rendered it

incapable of lifting safely the Intermodal Container, which, at the time of the Fatal Incident, weighed less than the Hoist Lift Truck's stated maximum capacity." (Id. ¶ 42).

Hoist does not move to dismiss those allegations in Count Two that allege a design defect. (See ECF No. 56-1 at 8). Rather, Hoist moves for dismissal of any allegations of manufacturing defect. (Id.). Specifically, Hoist argues that "[t]here are absolutely no facts or allegations in the . . . Amended Complaint identifying the manufacturing defect." (Id.). Further, Hoist maintains that in the absence of a "factual allegations identifying a purported manufacturing defect, those paragraphs of the . . . Amended Complaint [that refer to manufacturing failures] should be dismissed." (Id.). The Court disagrees.

To establish a manufacturing defect claim under the NJPLA, a plaintiff must establish that the item "deviated from the design specifications, formulae, or performance standards for the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae." N.J.S.A. 2A:58C-2.

In this case, with respect to allegations of a manufacturing defect, Plaintiff has alleged that Hoist failed to apply appropriate "engineering principles to protect against foreseeable dangers associated with its users' intended purpose," that Hoist manufactured the Hoist Lift Truck using materials that "were of inadequate grade and/or yield strength, rendering the Hoist Lift Truck unable to withstand it's stated maximum weight capacity," and that on account of the alleged manufacturing and design defects "of the spreader, gallows, mast hinge, mast and mast hinge bolts, the Hoist Lift Truck was unable to safely offload the Intermodal Container, causing the Fatal Incident." (Am. Compl. ¶¶ 35, 36, 41).

7

The Court finds that the above allegations are sufficient to survive Hoist's motion to dismiss Plaintiff's manufacturing claim. That is, the above allegations are sufficient to put Hoist on notice of the nature of this claim, and the Court notes that, to the extent Plaintiff does not have enough information to determine whether the product defect claim sounds more in design defect or manufacturing defect, discovery may assist Plaintiff in this regard. Accordingly, Hoist's motion to dismiss Plaintiff's claim of manufacturing defect is denied.

## B. Count Four

In Count Four of the Amended Complaint, Plaintiff purports to assert a negligence claim against a number of Defendants, including Hoist and TSI/Mi-Jack. (Am. Compl. at 11-18). Hoist and TSI/Mi-Jack have moved for dismissal of Plaintiff's negligence claim. The Court addresses the negligence allegations against each of the Moving Defendants, in turn, below.

### a. Hoist's Motion

Hoist now moves to dismiss Plaintiff's negligence claim. (ECF No. 56). Hoist asserts two bases for dismissal of this claim. First, Hoist argues that Plaintiff's negligence claim premised upon a failure to warn is subsumed by Count Three of Plaintiff's Amended Complaint, which asserts a claim of failure to warn under the New Jersey Products Liability Act. (ECF No. 56-1 at 4-5; Am. Compl. at 9-11).[3] Second, Hoist maintains that Plaintiff's claims of negligent maintenance and repair are not supported by the Agreement relied upon by Plaintiff and attached to the Amended Complaint. (Id. at 6-7). The Court addresses each argument in turn.

---

[3] It does not appear to this Court that Defendant Hoist seeks to dismiss Plaintiff's negligence claims premised upon negligent maintenance and repairs on the grounds that those claims are subsumed by the NJPLA. (See ECF No. 56-1 at 4-5). Accordingly, this Court need not analyze whether Plaintiff's negligence claim premised upon Hoist's alleged failure to maintain and repair the Hoist Lift Truck is subsumed by the NJPLA.

8

The Court first addresses Hoist's argument that Plaintiff's negligence claim based upon a theory of failure to warn is barred by Plaintiff's claim for failure to warn under the NJPLA. Generally, a plaintiff asserting a claim under the NJPLA foregoes the ability to recover under any other theory of liability as it relates to the defective product. N.J.S.A. 2A:58C–1(b)(3). The language of the PLA makes it clear that the Act is the only vehicle a plaintiff may use to recover for a product liability action, expressly providing that: "*any claim* or action for harm caused by a product, *irrespective of the theory underlying the claim*, except actions for harm caused by breach of an express warranty" falls under the ambit of the Act. Id. (emphasis added); *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991) ("[I]t [is] clear that [the PLA] ... effectively creates an exclusive statutory cause of action for claims falling within its purview."). Furthermore, New Jersey courts have expressly held that "[t]he [PLA] no longer recognizes negligence or breach of warranty (with the exception of express warranty) as a viable separate claim for 'harm' . . . caused by a defective product." *Tirrell v. Navistar Int'l, Inc.*, 248 N.J. Super. 390, 398 (N.J. Super. Ct. App. Div. 1991); *see Reiff v. Convergent Tech.*, 957 F. Supp. 573, 583 (D.N.J. 1997)("Under New Jersey products liability law, negligence and breach of warranty are no longer viable as separate claims for harm caused by a defective product."); *Oquendo v. Bettcher Indus., Inc.*, 939 F. Supp. 357, 361 (D.N.J. 1996)(same).

Notwithstanding the above, there are situations in which a plaintiff may pursue both a negligence claim and a products liability claim against the same defendant. Specifically, New Jersey courts have held that "actions based upon conduct related to the improper installation and maintenance of a product are not subject to strict tort liability," and rather are subject to a negligence claim. *See, e.g., Universal Underwriters Ins. Grp. v. PSE&G Co.*, 103 F. Supp. 2d 744, 748 (N.J. Super. Ct. App. Div. 2000) (collecting cases). For example, in *Thomas v. Ford*

*Motor Co.*, 70 F. Supp. 2d 521 (D.N.J. 1999), the District Court held that a claim for negligence based upon the defendant's installation of an airbag was not subsumed by plaintiff's products liability claim against that same defendant. Thus, although the NJPLA creates an exclusive cause of action for injury caused by a product, a plaintiff bringing such an action may pursue a negligence claim where "the alleged injury is not caused by a defect in the product itself, but by the service attendant to its use." *Universal Underwriters Ins. Grp.*, 103 F. Supp. 2d at 748. Here, Plaintiff argues that this line of cases applies to the case at bar. (See ECF No. 64 at 6-12). In order to analyze this argument, the Court must first consider the theories underlying Plaintiff's NJPLA claim for failure to warn (Count Three) and Plaintiff's negligence claim (Count Four), also premised upon, among other theories, Hoist's alleged failure to warn.

Here, in Count Three of the Amended Complaint, Plaintiff asserts a claim under the NJPLA for failure to warn. (Am. Compl. ¶¶ 46-55). Specifically, Plaintiff alleges that Hoist failed to warn the users of the Hoist Lift Truck about "dangers associated with tilting, shifting and/or rocking of the intermodal containers during its normal use and operation, particularly of the sort of lateral shifting that precipitated the Fatal Incident . . . ." (Id. ¶ 48). Plaintiff further alleges that Hoist "failed to provide the users of the Hoist Lift Truck with necessary instructions when faced with hydraulic failures during its normal use and operation." (Id. ¶ 49). Plaintiff pleads that, because of Hoist's alleged failure to warn Decedent about these risks, Decedent was deprived of the information necessary to operate the Hoist Lift Truck safely." (Id. ¶ 51).

In Count Four of the Amended Complaint, Plaintiff asserts a claim for negligence against Hoist. Plaintiff's negligence claim is premised upon the above-discussed Agreement entered into between Hoist and Non-Moving Defendant Norfolk South after the Railroad Defendants allegedly contacted Hoist with respect to deficiencies with the Hoist Lift Truck. (Am. Compl. ¶ 75).

Specifically, Plaintiff alleges that "[b]eyond its failures to properly design, manufacture, and warn about the Hoist Lift Truck, Hoist committed a separate tortious act subsequent to its sale of the Hoist Lift Truck (as addressed in Counts I and II); to wit, it failed to maintain properly the Hoist Lift Truck, pursuant to the Agreement." (Am. Compl. ¶ 75). Plaintiff further alleges that, notwithstanding the Agreement, Hoist "failed to properly maintain, make necessary repairs to and/or warn of the dangers of the Hoist Lift Truck." (Id. ¶ 78). Plaintiff alleges that because of these alleged failures, the Hoist Lift Truck Mr. Gomez was operating at the time of his death "was incapable of safely offloading the Intermodal Container," and therefore caused the collapse of the Hoist Lift Truck and, in turn, Mr. Gomez's untimely death. (Id. ¶ 79).

Hoist moves for dismissal of Plaintiff's negligence claim, insofar as it asserts a theory of failure to warn. Hoist maintains that "[b]ecause Plaintiffs' claims against [Hoist] are rooted in product liability, the Plaintiffs are not permitted by the PLA to maintain a separate claim against [Hoist] of negligence failure to warn." (ECF No. 56-1 at 5). The Court agrees that Plaintiff's negligence claim, insofar as it is based upon a "failure to warn," is subsumed by Plaintiff's failure to warn claim under the NJPLA.

In response, Plaintiff maintains that her negligence claim is not subsumed by the NJPLA because that claim is based upon Hoist's independent duty to maintain and repair its trucks, pursuant to the Agreement entered into between Norfolk South and Hoist. According to Plaintiff, the "products liability claims are based on Hoist's "defective design and failure to warn of inherent dangers of the Hoist Lift Truck . . . . Plaintiff's negligence claims are based on [Hoist's] failure to 'refurbish,' 'replace,' and 'warranty' the lift truck pursuant to [the] Agreement." (ECF No. 64 at 1). Stated differently, Plaintiff argues that Hoist "negligent[ly] fail[ed] to warn of the dangers it created because of such maintenance and repair." (Id.).

11

While the Court agrees with Plaintiff that its negligence claim premised upon Hoist's independent duty to maintain and repair the trucks pursuant to the Agreement is separate and apart from Plaintiff's design and manufacturing defect claim, the Court notes that Hoist is not arguing that Plaintiff's negligence claim premised upon design and manufacturing defect is subsumed by the NJPLA. Rather, Hoit's argument is that Plaintiff's negligence claim premised upon a failure to warn of dangers it created on account of its independent duty to maintain and repair the trucks is subsumed by the NJPLA. The Court agrees with Hoist. That is, regardless of the existence of the Agreement, Hoist had a duty to warn of dangerous attendant to the Hoist Lift Truck. In contrast, if not for the Agreement, Hoist would not have had an independent obligation to maintain and repair various parts of the Trucks. Therefore, while the Agreement may have created an independent duty for Hoist separate and apart from Hoist's general duties to produce a safe and workable product, the Agreement did not create an independent duty on Hoist to warn of any dangers it may have created by altering or repairing the Hoist Lift Truck. Accordingly, Hoist's motion to dismiss Plaintiff's negligence claim, only insofar as that claim is based upon a failure to warn, is granted.

Next, the Court addresses Hoist's argument that Plaintiff's claims of negligent maintenance and repair are not supported by the Agreement. (ECF No. 56-1 at 6-7). According to Hoist, the Agreement does not support Plaintiff's negligence claim. First, Hoist contends that contrary to the allegations in Count Four, the Agreement did not require Hoist to provide a "safe and suitable power industrial truck." (Id. at 6; Am. Compl. ¶¶ 77, 78). Instead, Hoist contends that, per the Agreement, Hoist was to refurbish, replace, repair and extend its warranty on specific parts of the Lift Truck only—the gallows and spreader. (ECF No. 56-1 at 6-7). Additionally, Hoist argues that even if the Agreement bestowed such duties upon Hoist, the Amended Complaint fails to

allege any facts to support the theory of negligent maintenance or repair. (Id. at 7). Specifically, Hoist states that the Amended Complaint does not identify the maintenance that was to be done that was not done, nor does it allege that Hoist received and ignored any request to make a repair. (Id.).

In response, Plaintiff argues that she has sufficiently plead a claim of negligent failure to repair and maintain the machine. (ECF No. 64 at 13-14). Plaintiff directs the Court to the Agreement itself. (Id. at 14). Pursuant to that Agreement, Plaintiff notes, Hoist was required to "refurbish or replace the spreader and gallows on all four [Hoist] machines . . ." and to make "all repairs required to be performed on these components during such a 15-year period including, but not limited to, repairs due to cracking from material fatigue." (Id. at 14, quoting Agreement). Plaintiff further directs the Court to the allegations in the Amended Complaint that Hoist "had an additional independent duty but failed to properly maintain, repair and modify the machine." (Id., quoting Am. Compl. ¶¶ 77, 78).

The Court agrees with Hoist that Plaintiff's allegations with respect to its negligence claim premised upon negligent maintenance and repair are not plead with sufficient specificity. That is, Plaintiff has alleged merely that Hoist had a duty to "perform maintenance, repairs and mak[e] modifications to the Hoist Lift Truck, pursuant to the Agreement," and that Hoist failed to do so. Unlike the allegations with respect to TSI/Mi-Jack, discussed below, Plaintiff has not plead that Hoist had an obligation to perform maintenance daily or at any periodic interval. Nor has Plaintiff alleged that Hoist was made aware of a particular issue that required maintenance. Accordingly, the Court will grant Hoist's motion to dismiss Plaintiff's negligence claim. However, the Court dismisses same without prejudice to Plaintiff's ability to re-plead this claim in a sufficiently particular manner.

### b. TSI/Mi-Jack's Motion

TSI/Mi-Jack have also moved to dismiss the negligence claim asserted against them in Count Four. In Count Four, Plaintiff asserts the following allegations against TSI/Mi-Jack. Plaintiff alleges that, during the relevant time period, Mi-Jack acted through TSI in "provid[ing] service, maintenance, repair, and parts to the hoist Lift Truck." (Id.). Specifically, TSI/Mi-Jack allegedly "had the duty to assemble and/or was responsible for and did maintain and service the Hoist Lift Truck, including performing daily maintenance as well as planned maintenance to the Hoist Lift Truck." (Id. ¶ 69). Further, Plaintiff alleges that TSI/Mi-Jack "had a duty to maintain the Hoist Lift Truck in a reasonably safe and suitable condition," that TSI/Mi-Jack "failed to properly maintain, repair and/or modify the Hoist Lift Truck," and that TSI/Mi-Jack "negligently and carelessly inspected the Hoist Lift Truck and allowed the Hoist Lift Truck to become dangerous and defective." (Id. ¶¶ 70-72). Plaintiff alleges that the aforementioned failures of TSI/Mi-Jack resulted in the collapse of the Hoist Lift Truck which killed Mr. Gomez. (Id. ¶¶ 73-74).

TSI/Mi-Jack contends that the above negligence claim is deficient because "[P]laintiff never identifies which alleged maintenance was negligently performed by the movants." (ECF No. 58-1 at 1). Stated differently, "Plaintiff's allegations do not even reveal if Plaintiff is alleging movants failed to properly: (1) maintain the [H]oist [L]ift [T]ruck; (2) repair the [H]oist [L]ift [T]ruck; (3) modify the [H]oist [L]ift [T]ruck; (4) maintain and repair the [H]oist [L]ift [T]ruck; (5) maintain and modify the [H]oist [L]ift [T]ruck; (6) repair and modify the [H]oist [L]ift [T]ruck; or ([7]) maintain, repair and moify the [H]oist [L]ift [T]ruck." (ECF No. 69 at 4-5). TSI/Mi-Jack characterizes Plaintiff's Amended Complaint as containing conclusory allegations that do not sufficiently put TSI/Mi-Jack on notice of the claims against them. (Id. at 6).

Plaintiff refutes this argument. First, Plaintiff contends that she is not required to identify the precise parts or maintenance that TSI/Mi-Jack failed to attend to. (ECF No. 63 at 5). Plaintiff argues that the law does not hold Plaintiff to such a heightened pleading standard to support her negligence claim, and further, that "Plaintiff clearly states that 'Mi-Jack, through its onsite agent, TSI', were responsible for **'daily maintenance'** and **'planned maintenance'**". (Id., quoting AM. Compl. ¶ 69 (emphasis in Plaintiff's brief)).

To state a claim for common law negligence, a plaintiff must set forth sufficient facts in support of the following elements: (1) duty of care, (2) breach of that duty, (3) proximate cause, and (4) actual damages. *See Polzo v. Cnty. of Essex*, 196 N.J. 569, 584 (2008). In this case, the Court finds that Plaintiff has sufficiently plead a negligence claim as against TSI/Mi-Jack. That is, Plaintiff has plead that TSI/Mi-Jack had a duty to maintain the Trucks daily and perform planned maintenance on the Trucks. Plaintiff alleges that TSI/Mi-Jack breached that duty by "failing to properly maintain, repair and/or modify the Hoist Lift Truck" and that such breach caused the Truck to be "incapable of safely offloading the Intermodal Container at Croxton Terminal on the date of the Fatal Incident," thereby causing Mr. Gomez's untimely death. (Am. Compl. ¶¶ 69, 71, 72, 73).

TSI/Mi-Jack also argue that Plaintiff's claims for wrongful death and loss of consortium and Plaintiff's survival action should be dismissed because the underlying negligence claim fails. As explained above, the Court finds that Plaintiff has sufficiently plead a claim for negligence as against TSI/Mi-Jack. Thus, the Court denies TSI/Mi-Jack's motion to dismiss Counts Five, Six, and Seven of the Amended Complaint.

## IV. Conclusion

For the reasons stated herein, Hoist's motion to dismiss Plaintiff's Amended Complaint is granted in part and denied in part. TSI/Mi-Jack's motion to dismiss Plaintiff's Amended Complaint is denied. An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED: September 7th, 2017

_____
Jose L. Linares
Chief Judge, U.S. District Court