<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARMEN ROSA GOMEZ, individually and as Administrator Ad Prosequendum of the Estate of Jorge L. Gomez, deceased,<br><br>*Plaintiff*,<br><br>v.<br><br>H&M INTERNATIONAL TRANSPORTATION, INC.; NORFOLK SOUTHERN CORPORATION; CONSOLIDATED RAIL CORPORATION; TECHNICAL SERVICES INTERNATIONAL; MI-JACK PRODUCTS, INC.; HOIST LIFTRUCK MANUFACTURING, INC.; FEDEX FREIGHT, INC.; GENERAL CABLE INDUSTRIES, INC.; PMX INDUSTRIES, INC.; BRADY MARINE REPAIR CO., INC.; and NORFOLK SOUTHERN RAILWAY COMPANY,<br><br>*Defendants*. | Civil No.: 17-cv-231 (KSH) (CLW)<br><br><br><br><u>OPINION</u> |

**Katharine S. Hayden, U.S.D.J.**

**I.      Introduction**

This lawsuit arises from fatal injuries plaintiff's decedent, Jorge L. Gomez, suffered while working at the Croxton Intermodal Terminal in Jersey City, New Jersey. Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company (together, "Norfolk Southern"), the owners of the terminal and the lift truck that Gomez was operating at the time of the incident, have moved for reconsideration of the Court's decision denying their motion for summary judgment on plaintiff's claim under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.* For the reasons set forth below, the motion for reconsideration will be denied.

**II.     Background**

As set forth in the Court's ruling denying summary judgment (D.E. 298), Gomez was employed by defendant H&M International Transportation, Inc. ("H&M") as a lift truck operator at the Croxton Intermodal Terminal.  H&M provided services at the Norfolk Southern-owned terminal pursuant to an August 1, 2016 operating agreement it had with Norfolk Southern (the "operating agreement").  On August 15, 2016, Gomez was using a lift truck to unload shipping containers from railcars when the truck collapsed under the weight of a container and crushed him.  The cause of the collapse and the components involved are disputed.

Plaintiff has asserted various statutory and common law claims against multiple defendants as a result of Gomez's injuries and death.  The motion presently before the Court specifically concerns plaintiff's FELA claim against Norfolk Southern.  Among other elements, a successful FELA claim requires an employment relationship between the plaintiff and defendant. *See* 45 U.S.C. § 51; *Felton v. Southeastern Pennsylvania Transp. Auth.*, 952 F.2d 59, 62 (3d Cir. 1991).  In seeking summary judgment Norfolk Southern argued that it was not Gomez's employer and therefore not subject to liability under the statute.  Plaintiff and defendant Hoist Liftruck Manufacturing, Inc. opposed Norfolk Southern's motion.

The Court observed in its opinion denying the motion that although it was undisputed that Gomez was employed by H&M, a FELA plaintiff can nonetheless establish his or her "employment" with a rail carrier such as Norfolk Southern "even while . . . nominally employed by another" in three ways: (1) a "borrowed servant" theory, (2) a "dual agent" theory, or (3) because the employee is a subservant of a company that was a servant of the railroad.  (D.E. 298, at 19-20 (citing *Kelley v. Southern Pac. Co.*, 419 U.S. 318, 324 (1974)).  Because, taking the facts and inferences in the nonmovant's favor (as is required at the summary judgment stage),

a genuine dispute of fact existed concerning the extent of control Norfolk Southern exercised over H&M's performance, and through H&M, over Gomez's performance, the facts potentially implicated the third category and Norfolk Southern was therefore not entitled to judgment as a matter of law. (*Id.* at 22-25.) Recognizing that the linchpin was whether the rail carrier (*i.e.*, Norfolk Southern) had the "power to direct, control and supervise the plaintiff in the performance of his work at the time he was injured and whether it played a 'significant supervisory role,'" the Court examined the facts offered in support of and against summary judgment. (*Id.* at 20 (citing *Williamson v. CONRAIL*, 926 F.2d 1344, 1350 (3d Cir. 1991)). H&M's terminal manager testified that Norfolk Southern could change the order of loading or unloading of containers and would do so by communicating to H&M supervisors; Norfolk Southern denied that it could do this, resulting in a credibility dispute not properly resolved at the summary judgment stage. (*Id.* at 22-23.) Norfolk Southern also directed where containers would be parked, provided consists to H&M, informed H&M of the location of "hot boxes" and expected them to be unloaded first, imposed timing expectations on H&M's work, and, under the operating agreement, retained the authority to control various aspects of H&M's performance, including the manner in which H&M carried out its assigned responsibilities.

Norfolk Southern argues that the Court should reconsider its ruling because it purportedly rests on an erroneous interpretation of *Del Vecchio v. Pennsylvania Railroad Co.*, 233 F.2d 2 (3d Cir. 1953). Norfolk Southern also points to out-of-circuit case law that it argues supports its view of how the factual record should have been interpreted and which it contends the Court erred in "only briefly discussing." (D.E. 301-1, NS Moving Br. 6 n.1.) Plaintiff and Hoist have opposed.

**III.    Standard of Review**

Motions for reconsideration of interlocutory rulings, such as the Court's denial here of Norfolk Southern's motion for summary judgment, are governed by L. Civ. R. 7.1(i), which allows an aggrieved party to seek reconsideration where the party believes the Court has overlooked information or controlling law.  To succeed, the moving party must demonstrate "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or to prevent manifest injustice."  *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

Reconsideration is an "extraordinary remedy" to be granted "sparingly."  *NL Indus., Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996).  It is not warranted simply because a party disagrees with a decision or wants to reargue the original motion.  *In re Wojtaszek*, 2021 WL 2070596, at *1 (D.N.J. May 21, 2021) (Vazquez, J.)  The movant must "present 'something new or something overlooked by the court in rendering the earlier decision.'"  *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 145 (D.N.J. 2010) (Rodriguez, J.) (quoting *Khair v. Campbell Soup Co.*, 893 F. Supp. 316, 337 (D.N.J. 1995)).  Something "overlooked" refers "only to facts and legal arguments that might reasonably have resulted in a different conclusion had they been considered."  *Id.*

Reconsideration is not an appropriate vehicle to express disagreement with the Court's interpretation of case law or the record.  *Leja v. Schmidt Mfg.*, 2008 WL 1995140, at *3 (D.N.J. May 6, 2008) (Debevoise, J.) ("A motion for reconsideration may not be used to 'ask the Court to rethink what it had already thought through—rightly or wrongly.'" (quoting *Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Maryland*,

4

744 F. Supp. 1311, 1314 (D.N.J. 1990)). *See also Cafaro v. HMC Int'l, LLC*, 2009 WL 2382247, at *2 (D.N.J. July 30, 2009) (Linares, J.) ("Disagreement with the Court's interpretation is a matter for appeal, not reconsideration.").

**IV.    Discussion**

In seeking reconsideration, Norfolk Southern relies on *Del Vecchio v. Pennsylvania Railroad Co.*, in which the Third Circuit held that a railroad was not the injured plaintiff's employer for purposes of a FELA claim. The plaintiff had been hired by Northern, which had a contract with the Pennsylvania Railroad Company to handle coal for it. 233 F.2d at 3. He was injured while working at the coal dumping station and sued the Pennsylvania Railroad. In considering the employment question, the Third Circuit pointed to a provision in the contract between Northern and Pennsylvania Railroad providing, in pertinent part, that Northern was an independent contractor and was to employ and pay "all persons engaged in the performance of such work, and all such persons shall be and remain the sole employees of [Northern], and subject to its exclusive authority, supervision, direction and control." *Id.* at 3-4.

Notwithstanding this language, the panel observed that if the contract was "contrary to the true relationship" between Northern and the railroad, it would not govern because "Northern's status depends on the facts," which it proceeded to examine. *Id.* at 4. The railroad told Northern which coal should be loaded onto which vessel, and when the vessel would be available. The railroad had one agent resident on the pier (in the same building where Northern's manager had his office) where the work took place who testified that "though he instructed Northern what coal to take and where to deliver it, he never had anything to do with the manner in which Northern's results were accomplished." *Id.* In carrying out its responsibilities, Northern used and repaired the railroad's equipment, cleaned the premises, and

5

maintained fire protection and security personnel. There was no "interlocking directorate or stock ownership" between the companies. *Id.* The manner of the work, or the way the work was to be done, was up to Northern; although the "cooperation and assistance" of the railroad "helped enormously," Northern controlled "the way it performed its job." *Id.* at 4-5. Under the circumstances, Northern was no more than an independent contractor for the railroad, and plaintiff – whom Northern had selected, hired, paid, could fire, and whose work it directed and controlled – was Northern's employee only, not the railroad's. *Id.*

This Court recognized the similarities between aspects of Northern's performance in *Del Vecchio* and H&M's performance in this case, including the ways in which Norfolk Southern's supplying of certain information and directions to H&M mirrored the Pennsylvania Railroad's directions to Northern. But the Court also concluded that the factual dispute over whether Norfolk Southern could exercise real-time control over H&M's activities, together with language in the operating agreement that reserved authority to control various aspects of H&M's performance, including aspects of the *manner* of its performance, sufficiently distinguished *Del Vecchio* to warrant denying summary judgment.

In other words, contrary to Norfolk Southern's argument, the Court did not fail to appreciate that under *Del Vecchio* (and, by extension, *Williamson*, 926 F.2d 1344, which Norfolk Southern argues should be read in light of *Del Vecchio*), the power or right to exercise control refers to the manner of the work being carried out. (NS Moving Br. 5.) Nor did the Court overlook the distinction between controlling the means and manner of performance, on the one hand, and the accommodations necessarily required for coordination and oversight of a large terminal operation, on the other. To the contrary, the Court expressly recognized both this distinction and Norfolk Southern's argument that the facts here placed it in the second category,

6

but disagreed that the record compelled a conclusion that no reasonable jury could find that Norfolk Southern exercised control falling within the first category. (D.E. 298, at 20, 22-25.) Norfolk Southern's argument appears to be premised on a "mere disagreement" with the Court's "reasoning and distillation of the applicable law and facts," which does not warrant reconsideration. *Jones v. Sanko*, 2016 WL 819618, at *10 (D.N.J. Mar. 2, 2016) (Simandle, J.).

For the same reason, the Court finds unavailing Norfolk Southern's reliance on a host of out-of-circuit (and therefore not controlling)[1] cases that it argues "have held that 'cooperation and consultation in coordinated operations' does not indicate control for purposes of the FELA." (NS Moving Br. 5-6; *see also* Reply Br. 5 (asserting that those cases "illustrate how numerous other courts have interpreted the FELA . . . in a way that demonstrates the correct interpretation of *Del Vecchio*").)[2] Again, the Court recognized that principle, but concluded that a jury question existed as to whether the actual operations at the terminal reflected that type of mere global oversight. *Campbell v. BNSF Railway Co.*, 600 F.3d 667 (6th Cir. 2010), a case Norfolk Southern discussed extensively in its original briefing and emphasizes again in seeking reconsideration, illustrates the task before a court considering the "employment" question Norfolk Southern raised in seeking summary judgment: it is a fact-intensive inquiry that looks at the actual operations at the terminal and the role of both the direct employer and the railroad that

---

[1] *See* L. Civ. R. 7.1(i) (requiring movant's brief to address "the matter or *controlling decisions*" purportedly overlooked) (emphasis added); *Talsania v. Kohl's Dept. Store*, 2009 WL 1562325, at *2 (D.N.J. June 3, 2009) (Ackerman, J.) (recognizing that only controlling—and not persuasive—decisions of law purportedly overlooked on the original motion may be the subject of a motion for reconsideration).

[2] Norfolk Southern did not seek or receive permission to file its reply brief, in contravention of L. Civ. R. 7.1(d)(3), but in its discretion, and in the absence of any objection, the Court has considered the brief. Additionally, the Court observes that the cited cases did appear in Norfolk Southern's summary judgment briefing, notwithstanding plaintiff's and Hoist's argument to the contrary.

7

the plaintiff also claims as his or her employer.  Although Norfolk Southern, believing that the facts in *Campbell* and the other cases it cites are sufficiently similar to warrant reaching the same outcome here—*i.e.*, that it was not the plaintiff's employer—has framed its motion for reconsideration as challenging correctness of the Court's interpretation of legal authority, at bottom Norfolk Southern is really challenging how the Court applied the facts to law that all parties agree is applicable and to its conclusion that those facts raise a jury issue. Reconsideration is not warranted.

**V.      Conclusion**

The motion is denied.  An appropriate order will issue.

Date: September 30, 2021

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.